[No. 33032. Department Two. December 3, 1954.]

*In the Matter of the Welfare of* CHARLES ROSS, JR., *et al.*

THE STATE OF WASHINGTON, *on the Relation of Charles Ross, Sr., Plaintiff,* v. THE SUPERIOR COURT FOR COWLITZ COUNTY, *J. E. Stone, Judge, Respondent.*[1]

[1]Reported in 277 P. (2d) 335.

*James O. Ballou,* for relator.

*Joe L. Johnson, Arthur H. Reed,* and *Frank L. Price,* for respondent.

HILL, J.—This is a review of an order entered in a juvenile court proceeding permanently depriving Charles Ross, Sr., of all custody, control, care, and paternal rights over each of his three minor children. (The mother of these children is dead.)

We express no views on the merits. The order must be reversed and a new hearing accorded Mr. Ross because of the failure of the juvenile court judge to comply with the request that all witnesses be sworn. (An affirmation is included within the connotation of "sworn" as used in this opinion. See Washington state constitution, Art. 1, § 6; RCW 5.28.010 to 5.28.060, inclusive [*cf.* Rem. Rev. Stat., §§ 1264-1269, inclusive].)

This statement is not to be tortured into a holding that all witnesses must be sworn in all juvenile court proceedings. It has long been recognized that informality and friendly discussion can, under many circumstances, attain the best results with juveniles and their parents. We do hold, however, that before parents can be permanently deprived of all custody, control, care, or parental rights over their children, they must be accorded the opportunity of a hearing, and at such hearing the witnesses should be sworn, and the failure to comply with a request that the witnesses be sworn is prejudicial error.

Further, at such hearings the usual rules relative to the admissibility of evidence should be applied. Fathers

and mothers should not be deprived of their parental rights on hearsay, which is but another form of unsworn testimony. The present wife of Mr. Ross was not a witness. Her allegations against him, contained in her cross-complaint in a divorce action then pending between them, were clearly hearsay. It was error to admit the cross-complaint in evidence and to dignify its allegations by setting them out in the findings of fact.

We will not discuss other assignments of error relating to hearsay admitted except to say that, while we recognize that considerable hearsay finds its way into the record in juvenile court proceedings, it being easier for the judge of that court to separate the grain of fact from the chaff of hearsay than to attempt to enforce the usual rules of evidence, it is our feeling that, on hearings of the character with which we are here concerned, proper objection to hearsay testimony should be sustained.

■  Nor do we approve the practice of permitting the probation officer to take over from the deputy prosecuting attorney assigned to the case, the examination, in whole or in part, of certain witnesses. We have had occasion heretofore to comment on this practice (see *In re Sickles*, 42 Wn. (2d) 17, 252 P. (2d) 1063 (1953)), and that comment was not intended as approbation.

■■  We disagree with the relator-father in his contention that the juvenile court was limited in its inquiry to conditions subsequent to the custody order of August 8, 1951. This is not the usual custody proceeding between parents, where a change in conditions is a *sine qua non* to a modification of a prior custody order. Dependent children are subject to the custody, care, guardianship, and control of the juvenile court (RCW 13.04.020 [*cf*. Rem. Rev. Stat., § 1987-1]), and that court may at any time change, modify, or set aside its orders relative to such children. RCW 13.04-.150 [*cf*. Rem. Rev. Stat., § 1987-15]. These children were wards of the juvenile court, and it could, on proper notice and on a proper showing, deprive the parents, temporarily or permanently, of the custody of their children. RCW 13-

.04.100, 13.04.140 [*cf.* Rem. Rev. Stat., §§ 1987-8, 1987-14]; *In re Miller,* 40 Wn. (2d) 319, 242 P. (2d) 1016 (1952). On the issue of whether a father or mother is to be permanently deprived of parental rights, the entire record of the parenthood is open to investigation and inquiry. Remote happenings are perhaps entitled to little weight, but the juvenile court is entitled to the entire story before it acts.

Here the father was deprived of custody by an order dated August 8, 1951, by which order it was adjudged that his children were dependent and they were made wards of the court. This order was not reviewed, and the children were ultimately placed in foster homes. The order was temporary and was subject to modification. It may be (and this is entirely suppositious but illustrative of why the court should not be bound to consider only matters subsequent to August 8, 1951, on the present hearing) that on August 8, 1951, the judge felt that the evidence justified an order permanently depriving the father of his parental rights but, before taking that drastic step, he wanted to give the father an opportunity to rehabilitate himself in the eyes of the court and to provide a suitable home for his children. Failure to avail himself of that opportunity within a reasonable time could properly convince the court that the severance of parental rights should be final and conclusive. A parent should not then be in a position to say to the court, as relator seeks to do here: I am no worse than I was when I was temporarily deprived of custody in 1951; therefore I cannot be permanently deprived of my parental rights in 1954. Such an argument would of course be a *non sequitur.*

We remand the proceeding to the juvenile court with directions to vacate the order under review and to grant the relator's motion for a new trial on the issue of whether he should be permanently deprived of the custody, care, control, and all parental rights over each and all of his children.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and DONWORTH, JJ., concur.